MORTON SCOTT ET AL *v.* W. S. SCOTT'S EXECUTRIX.

**Executor and Administrator—Right to Institute Action by Executrix on Note Made to Deceased, as Executor.**

Though an executrix, cannot, as such, maintain an action on a note made payable to her testator as executor, unless the petition is demurred to, or objection made in their answer, defendants will be deemed as having waived the objection.

**Same—Settlement of Accounts.**

Where an executor and the distributees make and agree on a settlement of the estate between them, they will not be allowed to reopen and controvert items in said settlement, in a suit between said distributees and the executrix of the testator and former executor.

APPEAL FROM JESSAMINE CIRCUIT COURT.

April 15, 1869.

OPINION OF THE COURT BY JUDGE PETERS:

It may prove as satisfactory to state the conclusions to which the court has been brought by a careful examination of the record, as it would be, to amplify the reasons for these conclusions. The conclusions will therefore be briefly stated.

It is however proper to dispose of two preliminary questions.
1. It is insisted, that as the note which is the foundation of the

action was executed to William S. Scott, executor of Thomas B. Scott, deceased, that his executrix, who is the plaintiff in the action, cannot as such executrix, maintain the action. And that question is elaborately debated by counsel for appellants.

To the petition, appellants failed to demur, although the objection appeared on the face of it. Nor did they make the objection in their answer that appelleee could not maintain the action in her name as executrix. Consequently, appellants cannot be heard now to complain that appellee has no capacity to sue. They must be deemed to have waived the objection. *Sec. 123, Civ. Code.*

The *second preliminary* question comes from appellee, that as this was not a suit to settle the estate of Thomas B. Scott, the testator, the court below should not have credited appellants by their distrbutable shares of said note.

That objection certainly does not come with any grace from appellee. Her testator lived more than eight years after his qualification as executor of his father, and more than five years after the maturity of the note, and had failed to settle his executorial accounts, nor had appellee settled her accounts, although nearly eight years had elapsed from the death of the testator to the bringing of this action.

The whole period being over 16 years from the qualification of her testator to the institution of this action, without a final settlement. And besides, in the settlement made in 1853 by her testator with appellants, he allowed them a credit on the note then due for their distributable share of said note. Showing that he regarded the debts of his testator as paid and the devisees entitled to their respective parts of their father's estate. And it may be presumed that an agreement existed between the parties that appellants should be credited on their note by their respective portions under the will at the making of the contract.

The settlement of the 1st of August, 1853, appears to have been made with great care, and to have been thoroughly understood by the parties, and no errors or mistakes in the same are alleged, or suggested, in their pleadings by either party, but a slight mistake in the calculation of interest was presented by Samuel Scott to W. S. Scott very soon after said settlement was made, which seems to have been admitted by the latter, and as that settlement was acquiesced in as thus corected, it must be treated and regarded as a final settlement of all open accounts, or claims, naturally

existing, except such as were then stated to be unsettled, up to its date. Consequently the claim for wood and corn in the account for 1853, presented by appellants with their answer was properly disallowed by the court below.

The last item of $244 for wood does not show in what month, months, or season of the year the wood was delivered, and as appellants do not show the delivery was after the settlement, the court cannot assume it was afterwards and give credit for it.

The evidence as to the delivery of the corn and beef charged in the account of 1854, is very indefinite and uncertain and we cannot say therefore that the court below erred in refusing to allow a credit therefor.

And thus the same may be said of the bills charged in the account of 1855. There is no charge for wood in the account for 1854, 1855 and 1856, but in the account for 1857 there is a charge for wood sold Wm. Scott. And James O. Henry proves he hauled 57 cords of wood to him from appellant's farm, which testator told him he got of them in the tree, and had it cut and split, and he proves what the wood was worth and that he hauled it.

The claims for credits for money collected by appellee's testator from Rice for the Woolfolk farm, which Mrs. Rice and Mrs. Estill were entitled to, will be next considered.

The master's report shows the amount of Rice's notes with interest on them to the date the note sued on was due, to be ..........................$4,457.67
Mrs. Roberts and Mrs. Estill were entitled to 2-3 of that sum, or .............................$3,105.11 1-3
On the settlement made by the parties and approved by their signatures, dated 21st of November, 1851, and in which the note first due for the land was settled, appellants were credited by amount received for Woolfolk farm ...........................$1,355.60
And on the settlement of the 1st of August, 1853, of the note for the second payment of the land, they are credited by ...............................  $602.00
On the last named date Mrs. Roberts and Miss N. E. Scott, now Mrs. Estill, receipted to W. S. Scott for money collected of Rice .....................$1,362.95
On the 26th of September, 1851, Mrs. Roberts executed a receipt to him for money received of Rice..  $701.64

and on the same day Miss N. E. Scott receipted to
him for the same amount ..................... 701.64

Making in all .........................$4,723.83
Deduct amount they were entitled to ............ 3,105.11 1-3

Making this sum more ..................$1,618.71 2-3
than Rice's whole indebtedness amounted to. It must be that
some of said receipts were given for credits which had been al-
lowed on one or both of the notes settled in the life time of
William Scott; but how it really is, the record before us does not
explain, which might have been done perhaps by taking Rice's
deposition, but that was not done, and this court cannot venture
to adjust it without evidence.

For the mistake in the settlement of August 1st, 1853, in the
calculation of interest of $22.59 appellants were paid as is shown
by exhibit dated 12th of August, 1853, signed by R. S. & William
Scott.

A part of the price of the crop of hemp raised in 1852, viz:
the sum of $662.35, was applied to the discharge of the note for
the second payment for the land. And the residue of the crop
for that year, viz: the sum of $572.16, was to have been credited
on the note now in contest. The crop of hemp raised in 1853
amounted, as the masters report shows,

to ...................................... $629.33
That of 1854 ........................... 845.93
That of 1855 to ......................... 1,326.83
Add the balance of the crop of 1852 ......... 572.16

Total hemp crop to 1855 inclusive .......$3.374.25
Appellants cannot now be credited by the whole of this
sum, because on the 12th of February, 1854, testator sent
in a check to Samuel Scott in Missi., one of the firm,
$1,200, within $1.49 of the full amount of the crop of
1853, and the balance on the crop of 1852, which in ab-
sence of evidence to the contrary must be regarded as pay-
ment therefor.

On the 23rd of May, 1855, he sent to his brother Samuel, then
in Missi., another check for $900, the crop of 1854 amounting to
only $845.93, making the sum of $54 more than that crop came

to. And on the 17th of July, 1856, he paid to R. S. Scott $880 on the crop of 1855, as the receipt for the same expresses, and on the 29th of August, 1856, he paid him the further sum of $186.53 on said crop; these receipts acknowledge payments in cash; the court below therefore properly rejected all credits for the crops of hemp for those years, except the difference between what they amounted to, and said payments, which is as follows:

Total amount of hemp crops ...............$3,374.25
Total amount of payments ................. 3,166.53

Making a difference in favor of appellants of... $207.72
to which add price of wood hauled by Henry.... 39.75

Makes the credit just ................... $247.47

the sum the court below allowed—but the credit was given in the judgment of the date of the note and this we approve because there was more than that sum due on the crop of 1852, before any payments were made, and interest allowed by the master was properly rejected.

Keith proves he got the crops of hemp raised in 1856, 1857 and 1858, and there is therefore no pretext for claiming credit for those crops.

Appellants are entitled to credit on the note for their respective portions, as devisees of Thomas B. Scott, and the court below so determined. It is not shown that there are any outstanding debts against the estate, and appellee's testator credited then with the 5-10 or one-half of the note for the second installment on the land as their share thereof as devisees. But the court below credited them by the sum of $596.69 as the share of each, aggregating the sum of $2,983.45 as the full amount to which they were entitled. There were ten devisees of Thomas B. Scott—appellants are entitled to 5-10 or one-half of what is to be divided. The note is for $7,051.25, the one-tenth of which is $705.12½, and the half of the amount of the note would be $3,525.62½, and no reason is perceived why appellants are not entitled to a credit for this sum less a commission of 5 per cent as an allowance to appellee's intestate which is $176.25. The court below therefore erred in not allowing them credit for $3,349.39 of the date of the maturity of the note, instead of $2,983.45, making a difference in favor of appellants of $365.49. Appellee's testator allowed

them a credit for the full half of the note for 2nd payment as their distributable share thereof on the settlement he made with them.

John Scott proves that William S. Scott as executor of his father owed him $397.79-100 the balance of his legacy, and that appellant Morton Scott paid him that sum for said executor on the 27th of January, 1854. There is no evidence that this money was ever refunded to Morton Scott, or to any one of the obligors in the note; they were then indebted to William S. Scott as executor and it is probable, indeed scarcely to be doubted, that the payment was made to John Scott for the executor, and to be credited on said note, and the credit should have been given as of the 27th of January, 1854.

The court below also erred to the prejudice of appellee. The credit for $330.75 was properly allowed, but it was erroneous to fix the date of that credit at the time the note sued on fell due, the payments were not made until December, 1862, or it may be January, 1863, and that credit should have been dated as of the 1st of January, 1863.

For the errors herein pointed out alone the judgment is reversed on the original and cross-appeals, and the cause is remanded with directions to correct the judgment, as herein indicated, and for further proceedings not inconsistent with this opinion.

*Lindseys, Bronaugh,* for appellee.

*Messick, James,* for appellants.